# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TITO RIVERA, | Civil Action No. 2: 13-cv-1394 |
| Petitioner, | United States Magistrate Judge Cynthia Reed Eddy |
| v. | |
| KEN CAMERON, Superintendent of SCI Houtzdale, THE DISTRICT ATTORNEY OF ALLEGHENY COUNTY, and the PA STATE ATTORNEY GENERAL, | |
| Respondents. | |

## MEMORANDUM OPINION AND ORDER

Before the Court is a petition for a writ of habeas corpus (ECF No. 1) filed pursuant to 28 U.S.C. § 2254 by state prisoner Tito Rivera. For the reasons that follow, the petition will be denied and a certificate of appealability will be denied.[1]

### Relevant Factual and Procedural History

Petitioner, Tito Rivera ("Petitioner" or "Rivera"), is a state prisoner confined at the State Correctional Institution in Houtzdale, Pennsylvania. He is challenging the judgment of sentence that was imposed upon him by the Court of Common Pleas of Allegheny County on September 9, 2008. The trial court, the Honorable Donna Jo McDaniel, set forth the factual and procedural history of this case as follows:

> The evidence presented at trial established that in the early morning hours of August 25, 2007, college students Michael Zalac and Andrew Herlihy were outside their house on Zulema Street in Oakland when they were approached by [Rivera], who asked to borrow a cell phone to make a call. After making two calls, [Rivera] returned the phone to the young men, who turned to walk into the

---

[1] The parties have consented to jurisdiction by the undersigned Magistrate Judge. *See* ECF Nos. 8 and 10.

1

house. [Rivera] then pulled a gun and forced the young men into the house, and then into the living room, where their housemates, Reese Schoy and Nathan Good, were watching a movie. [Rivera] threatened to kill them and demanded money from them, and all complied except for Michael, whose wallet was in his room on the third floor. [Rivera] made the young men walk upstairs to the bedroom in a line at gunpoint, continuously threatening to kill them. After retrieving Michael's wallet, [Rivera] asked if there were any other housemates, and was told that the last housemate, Keith Haselhoff, was asleep with his girlfriend, Logan Dillinger, on the second floor. [Rivera] moved the group to Keith's room, woke Keith and Logan, and demanded their money. After they complied, [Rivera] searched Logan's purse and found some other money that she had forgotten about. Angered, [Rivera] made the men lay face down on the floor, threatened to kill them if they moved or spoke and took Logan into the adjoining bathroom, where he undressed her, touched her breasts, forced her to perform oral sex on him twice and had also intercourse with her. Afterwards, he ordered her to shower and return to the room without her clothes. – though she was able to grab a towel on her way out. Back in the bedroom, [Rivera] ordered the men to pack up an X-Box video game system and various Steeler jerseys he noticed in the room, allowed Logan to get dressed and then had her count the money he had collected – approximately $300.00. Unsatisfied with the amount, [Rivera] ordered all the men to stand and dress in non-descript clothing so they could all go to a nearby ATM and withdraw more money. As [Rivera] was preparing to move the group out of the room, Michael noticed that he was no longer holding the gun and jumped on him. The other men followed suit and Logan ran out of the house and summoned the police. When the police arrived, they found [Rivera] on the bedroom floor being restrained by the men, his hands tied with shoelaces and his feet bound with an extension cord.

[Rivera] was charged with six (6) counts each of Robbery and Terroristic Threats – one (1) count for each victim – and also with Rape, Involuntary Deviate Sexual Intercourse (IDSA), Aggravated Indecent Assault, Indecent Assault, Simply Assault and Burglary, but prior to trial, the Aggravated Indecent Assault charge was withdrawn. Following a jury trial, [Rivera] was found guilty of all charges except Simple Assault.

[Rivera] appeared before this Court on September 9, 2008 and was sentenced to eight (8) consecutive terms of imprisonment of 10-20 years at each of the Robbery counts, Rape and IDSI, for an aggregate term of 80 – 160 years.

Trial Court Opinion, 3/16/09 at 1-3 (footnotes omitted) (ECF No. 9-1, at 21-23).

Allegheny County Assistant Public Defender Lisa Phillips represented Rivera during trial and sentencing. Timely post-sentence motions were filed, which were denied on September 17,

2008. Rivera, through new counsel, Assistant Public Defender Kirk J. Henderson, filed a timely Notice of Appeal with the Pennsylvania Superior Court, which was docketed at 1718 WDA 2008. On appeal, Rivera raised the following issue:

> The Lower Court erred in imposing its sentence because the de facto life sentence of 80 to 160 years is unreasonable and excessive.
>
> A. The 80-160 year sentence imposed by the lower court is unreasonable.
>
> B. The life sentence imposed on Mr. Rivera violates the state and federal prohibitions against cruel and unusual punishment.

Brief for Appellant. (ECF No. 9-2 at 2.) The Superior Court, by Order dated November 20, 2009, affirmed the judgment of sentence. *Commonwealth v. Rivera,* No. 1718 WDA 2008, slip op. (Pa. Super. Nov. 20, 2009) (ECF No. 9-3 at 1-12). On July 7, 2010, the Pennsylvania Supreme Court denied further review. (ECF No. 9-3 at 15.) Rivera did not seek a writ of certiorari from the Supreme Court of the United States.

On July 8, 2011, Rivera filed a *pro se* petition for relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. § 9541 – 9546. (ECF No. 9-3 at 16.) Scott Coffey, Esquire, was appointed to represent Rivera. On January 11, 2012, Attorney Coffey filed a "No Merit" Letter and Motion to Withdraw as Counsel. (ECF No. 9-4, at 1-20.) After giving proper notice to Rivera, by Order dated February 1, 2012, the PCRA court entered its final order dismissing the PCRA petition without a hearing. (ECF No. 9-5 at 23.)

Rivera filed an appeal to the Superior Court. On appeal, Rivera raised the following four claims:

> 1. Was Appellant denied his rule based right to the effective assistance of counsel on his first PCRA Petition?
>
> 2. Was trial counsel ineffective for failing to request a mistrial where the jurors were discussing the case in the hallway prior to the beginning of deliberations?

3

3. Was trial counsel ineffective for failing to object to the trial court's use of the word "murder" in the jury charge?

4. Was Appellant's rights as protected by the Pennsylvania and United States Constitutions violated where his case was inappropriate reassigned?

Brief for Appellant. (ECF No. 9-5, at 2).

On January 28, 2013, the Superior Court affirmed the dismissal of the PCRA Petition. It also found that the first claim was waived because Rivera had not properly preserved it for appeal. *Commonwealth v. Rivera,* No. 310 WDA 2012, slip op at 5 (citing Pa.R.A.P. 302(a)) (Jan. 28, 2013). (ECF No. 9-5 at 42.) The Pennsylvania Supreme Court denied further review on August 6, 2013.

On or about September 13, 2013, Rivera initiated the present proceedings in this Court by filing a pro se petition for writ of habeas corpus. He raises five claims for relief. Petition Under § 2254 for Writ of Habeas Corpus. (ECF No. 1.) Respondents filed an Answer on October 29, 2013. (ECF No. 9). The matter is ripe for disposition.

**B.  Standard of Review**

1. <u>28 U.S.C. § 2254</u>

This case is governed by the federal habeas statute applicable to state prisoners. 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214, enacted on April 24, 1996 ("AEDPA"). Under this statute, habeas relief is only available on the grounds that Fulton's convictions were obtained in violation of his federal constitutional rights. 28 U.S.C. § 2254(a). Errors of state law are not cognizable. *See., e.g., Priester v. Vaughn*, 382 F.3d 394, 402 (3d Cir. 2004) ("Federal courts reviewing habeas claims cannot 'reexamine state court determinations on state-law questions.'")

(quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). *See also Real v. Shannon,* 600 F.3d 302-309-10 (3d Cir. 2010).

AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). It "requires federal courts collaterally reviewing state proceedings to afford considerable deference to state courts' legal and factual determinations." *Lambert v. Blackwell*, 387 F.3d 210, 234 (3d Cir. 2004). As codified at 28 U.S.C. § 2254(d), AEDPA provides as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court of the United States has stressed the "highly deferential" review that this Court must accord the state court's decision under § 2254(d):

> We have explained that "an unreasonable application of federal law is different from an incorrect application of federal law." *Williams v. Taylor*, 529 U.S. 392, 410 (2000). Indeed, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411. Rather, that application must be "objectively unreasonable." *Id*. at 409. This distinction creates "a substantially higher threshold" for obtaining relief than de novo review. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). AEDPA thus imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy,* 521 U.S. 320, 333 n.7 (1997), and "demands that state-court

5

decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam).

*Renico v. Lett*, 599 U.S. 766, 773 (2010).

Even more pointedly, the Supreme Court elaborated:

If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further.

*Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Our Court of Appeals has made clear that "the federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation." *Hassine v. Zimmerman,* 160 F.3d 941, 954 (3d Cir. 1998). Put simply, "habeas proceedings are not the appropriate forum for [a prisoner] to pursue claims of error at the PCRA proceeding . . . . It is the original trial that is the 'main event' for habeas purposes." *Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2004).

Importantly, regardless of whether a state court has adjudicated a claim on the merits so as to invoke review under the standard set forth in § 2254(d), a federal habeas court must presume all of the state court's factual findings are correct unless the presumption is rebutted by clear and convincing evidence. *See., e.g., Palmer v. Hendricks*, 592 F.3d 386, 392 (3d Cir. 2010) (citing 28 U.S.C. § 2254(e)(1)). *See also Weeks v. Snyder*, 219 F.3d 245, 259 (3d Cir. 2000) (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983), for the proposition that habeas review does not permit a federal court to redetermine the credibility of witnesses whose demeanor has been observed by the state court).

6

2. Procedural Issues

Before the Court can address the merits of Rivera's claims, it is necessary to examine whether this petition fulfills the applicable procedural requirements, as set forth in AEDPA.

    a. *AEDPA's Statute of Limitations*

The first consideration in reviewing a federal habeas corpus petition is whether the petition was timely filed under AEDPA's one-year limitations period for section 2254 petitions. 28 U.S.C. § 2244(d). The Court agrees with Respondents that Rivera's claims are timely under AEDPA's statute of limitations

    b. *Exhaustion*

It is next necessary to determine whether Rivera's claims have been adequately exhausted in the state courts. 28 U.S.C. § 2254(c). It is well settled that a state prisoner must exhaust all of his claims by "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel,* 526 U.S. 838 (1999); *see also* 28 U.S.C. § 2254(b)(1)(A). The exhaustion requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Rose v. Lundy*, 455 U.S. 509, 517 (1982). The burden is on the habeas petitioner to establish that he has presented his federal constitutional claims (both facts and legal theory) to all levels of the state judicial system. *See Gattis v. Snyder*, 278 F.3d 222, 231 (3d Cir. 2002) (quoting *Evans v. Court of Common Pleas*, 959 F.2d 1227, 1231 (3d Cir. 1992)). In Pennsylvania, this requirement generally means that a petitioner in a non-capital case must have presented every federal constitutional claim raised in his habeas

petition to the Common Pleas Court and then to the Superior Court either on direct or PCRA appeal. *See, e.g., Lambert,* 387 F.3d at 233-34.[2]

Exhaustion is not a jurisdictional limitation, however, and federal courts may review the merits of a state petitioner's claims prior to exhaustion when no appropriate remedy exists. *Christy v. Horn*, 115 F.3d 201, 206 (3d Cir. 1997); *Carter v. Vaughn*, 62 F.3d 591, 594 (3d Cir. 1995). A petitioner shall not be deemed to have exhausted state remedies, however, if he has the right to raise his claims by any available state procedure. 28 U.S.C. § 2254(c). This Court can deny an unexhausted claim on the merits only if the claim is without merit.

    c.    *State Court Procedural Default*

Beyond questions of exhaustion, a federal court may be precluded from reviewing claims under the "procedural default doctrine." doctrine." *Gray v. Netherland*, 518 U.S. 152, 162, (1996); *Coleman v. Thompson*, 501 U.S. 722, 732 (1991); *Sistrunk v. Vaughn*, 96 F.3d 666, 675 (3d Cir .1996). Like the exhaustion requirement, the procedural default doctrine was developed to promote our dual judicial system and, in turn, it is based upon the "independent and adequate state law grounds" doctrine, which dictates that federal courts will not review a state court decision involving a question of federal law if the state court decision is based on state law that is "independent" of the federal question and "adequate" to support the judgment. *Coleman*, 501 U.S. at 750.

As the United States Court of Appeals for the Third Circuit explained in *Rolan v. Coleman*:

---

[2]     Even if a state court refuses to consider the claim on procedural grounds, it is still exhausted as long as the state court had the opportunity to address the claim. *Nara v. Frank*, 488 F.3d 187, 197-98 (3d Cir. 2007).

> Procedural default occurs when a claim has not been fairly presented to the state courts (i.e., is unexhausted) and there are no additional state remedies available to pursue, *see Wenger v. Frank*, 266 F.3d 218, 223-24 (3d Cir. 2001); or when an issue is properly asserted in the state system but not addressed on the merits because of an independent and adequate state procedural rule, *see McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999).

*Rolan,* 680 F.3d 311, 317 (3d Cir. 2012).

In *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), the United State Supreme Court held that federal courts should not reach an alleged violation of federal law on habeas review if the state court's decision rests on an independent and adequate state ground.

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

"The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." *Walker v. Martin*, 562 U.S. 307 (2011). The doctrine applies whether the default occurred at trial, on appeal, or during collateral proceedings. *Edward v. Carpenter*, 529 U.S. 446, 451 (2000).

A state's procedural rules are entitled to deference by federal courts; a petitioner's violation of a state procedural rule may constitute an independent and adequate state law ground for denial of federal review of habeas claims under the procedural default doctrine. *Sistrunk*, 96 F.3d at 673. Moreover, violations of a state's procedural rules may constitute an "independent" and "adequate" state ground sufficient to invoke the procedural default doctrine even where no state court explicitly has concluded that a petitioner is procedurally barred from raising his claims. *Glass v. Vaughn*, 65 F.3d 13, 15 (3d Cir. 1995), *cert. denied*, 516 U.S. 1151 (1996); *Carter*, 62 F.3d at 595. The procedural default doctrine applies only when a state procedural rule

9

is consistently and regularly applied. *Banks v. Horn*, 126 F.3d 206, 211 (3d Cir. 1997) (quoting *Johnson v. Mississippi*, 486 U.S. 578, 588–89 (1988)); *see also Doctor,* 96 F.3d at 684 (the state rule must be firmly established and regularly followed before it can be considered an independent and adequate state law ground sufficient to foreclose federal court review under the procedural default doctrine).

A petitioner whose constitutional claims have not been addressed on the merits due to procedural default can overcome the default, thereby allowing federal court review, if he or she can demonstrate either (i) "cause" for the default, i.e., that some objective factor "external to the defense" impeded efforts to comply with the state's procedural rule, and "actual prejudice;." or that failure to consider the claims would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *Martinez v. Ryan*, -- U.S. ---, 132 S. Ct. 1309 (2012). The United States Supreme Court has defined "cause" as "some objective factor external to the defense." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). "[A] showing that the factual or legal basis for a claim was not reasonably available to counsel . . . or  . . . some interference by officials" are two examples, but not an exhaustive list. *Id.*

The second exception to the procedural default rule arises when a petitioner demonstrates that failing to allow his claims to proceed would result in a fundamental miscarriage of justice. *Schlup v. Delo*, 513 U.S. 298, 320-22 (1995) (decided in the context of successive petitioner). To show a fundamental miscarriage of justice, a petitioner must demonstrate that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id*. at 321 (quoting *Murray*, 477 U.S. at 496). Under this standard, a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not

presented at trial." *Schlup,* 513 U.S. at 324. Once such evidence is presented, a petitioner must then show that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id*. at 327. There is no question that the instant case is not the type of extraordinary case in which Rivera can overcome the default of his claims by way of the miscarriage of justice exception.

Lastly, if a petitioner has committed a procedural default and has not shown either cause and prejudice or a miscarriage of justice, the proper disposition is to dismiss the procedurally defaulted claim with prejudice. *See, e.g.*, *Wainwright v. Sykes*, 433 U.S. 72 (1977).

### C. Discussion of Petitioner's Claims

As stated above, Rivera has raised five claims in his federal habeas petition. The claims will be addressed seriatim.

<u>CLAIM ONE</u> – "<u>Sentence is de facto life sentence, excessive and constitutes cruel and unusual punishment</u>."

This claim was raised by Rivera in state court on direct appeal. Rivera argues that his sentence was an unreasonable de facto life sentence for a single episode crime and that the sentence is excessive and constitutes cruel and unusual punishment. Both the trial court and the Superior Court denied the claim on its merits.

A claim of an excessive sentence is not cognizable on federal habeas review. Unless a habeas petitioner asserts that a state sentence constitutes cruel and unusual punishment prohibited by the Eighth Amendment, or that it is arbitrary or otherwise in violation of due process, the legality of a sentence is purely a question of state law. *Chapman v. United States*, 500 U.S. 453, 465 (1991); *Pringle v. The Court of Common Pleas*, 744 F.2d 297, 300 (3d Cir. 1984). Generally, a sentence within the limits imposed by statute is neither excessive nor cruel

and unusual punishment under the Eighth Amendment. *United States v. Miknevich,* 638 F.3d 178 (3d Cir. 2011).

Here, Rivera argues that his sentence is both unreasonable and violates the Eighth Amendment. The Pennsylvania Superior Court reviewed Rivera's claim and determined that the sentence was neither unreasonable under state law nor cruel and unusual under the Eighth Amendment. The Superior Court specifically stated:

> [Rivera] robbed six people at gunpoint during a single criminal episode. He was convicted of six counts of robbery. Consequently, he received six sentences. Thus, we discern no error with regard to that aspect of [Rivera's] aggregate sentence.
>
> . . .
>
> Having thoroughly reviewed the record, we conclude that the trial court considered the individual circumstances of [Rivera's] case and all relevant factors under section 9721(b), engaged in a proper balancing of those factors, imposed sentences <u>within the statutory maximum</u>, and provided reasons for the sentences on the record. We further conclude that, given the senseless nature of [Rivera's] crimes, his characteristics and imperviousness to rehabilitation, and the danger to society he presents, [Rivera's] <u>overall sentence was not unreasonable</u>. Therefore, the sentencing court did not abuse its discretion in sentencing [Rivera] outside of the guidelines.

*Commonwealth v. Rivera,* No. 1718 WDA 2008, slip op. at 8-10 (Pa. Super. Nov. 20, 2009) (emphasis added) (ECF No. 9-3 at 1-12). After finding the sentence did not meet the "unreasonable" standard under state law, the Superior Court thoroughly addressed Rivera's claim under Eighth Amendment standards and concluded, "[h]aving determined that [Rivera's] sentence did not meet the 'unreasonable' threshold, we further conclude that it certainly did not meet the threshold of 'cruel and unusual punishment'." *Id.* at 12.

In deciding Rivera's claim, it is clear that the appellate court applied the correct standard for a claim alleging cruel and unusual punishment under the Eighth Amendment. The Superior

Court's determination was neither contrary to or involved an unreasonable application of clearly established federal law. Accordingly, Claim One will be denied.

CLAIM TWO – "PCRA counsel was ineffective for filing a No Merit Letter."

This claim was raised by Rivera in his PCRA appeal. The Superior Court deemed this claim waived as Rivera had raised his claim of PCRA counsel's ineffectiveness for the first time on appeal and therefore the court could not review it under the PCRA. *Commonwealth v. Rivera*, No. 310 WDA 2012, slip op at 5 (citing Pa.R.A.P. 302(a)) (Jan. 28, 2013) (ECF No. 9-5 at 42).

There are a number of problems with this claim. First, this claim is procedurally defaulted and Rivera does not establish "cause" to overcome the default. Further, even if this claim were not procedurally default, this claim is non-cognizable on habeas review. Rivera did not have a constitutional right to counsel during his PCRA proceeding, *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987), and for that reason, this claim is not cognizable on habeas review. *See Coleman*, 501 U.S. at 752-53 ("There is no constitutional right to an attorney in state post-conviction proceedings . . . . Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings. *See Wainwright v. Toma*, 455 U.S. 586 (1982) (where there is no constitutional right to counsel there can be no deprivation of effective assistance.)"). In fact, the federal habeas statute expressly states that a claim of collateral counsel's ineffectiveness is not cognizable in a federal habeas action. 28 U.S.C. § 2254(i) ("[t]he ineffectiveness of counsel during Federal or State collateral post-conviction proceedings shall not be ground for relief in a proceeding arising under section 2254.").

Moreover, Attorney Coffey was charged with exercising his professional judgment in deciding whether Rivera had any colorable claim for PCRA relief. He also had an obligation under Rule 3.1 of Pennsylvania's Rules of Professional Conduct not to raise frivolous claims.

*See, e.g., Commonwealth v. Chmiel*, 30 A.3d 1111, 1190-91 (Pa. 2011). But even more importantly, Attorney Coffey was permitted to withdraw as Rivera's PCRA attorney and Rivera did not object or inform the court that Attorney Coffey did not accurately present to it the claims Rivera wished to raise. It is worth pointing out that since Attorney Coffey filed a Turner/Finley no merit letter and was permitted to withdraw as Rivera's counsel, Rivera proceeded pro se in his PCRA proceeding and he cannot blame Attorney Coffey for his lack of success on any of his PCRA claims. Claim Two is denied as it is procedurally defaulted; in the alternative, it is not denied because it is not cognizable on federal habeas review.

> CLAIM THREE – "Trial Counsel was ineffective for failing to request a mistrial when the jurors were discussing the case in the hallway prior to deliberations."

This claim was raised by Rivera in his PCRA proceedings. Both the PCRA trial court and the Superior Court denied the claim on its merits. In analyzing Rivera's claims under the two-part test announced in *Strickland v. Washington,* 466 U.S. 668 (1984), this Court must apply the standards set forth in § 2254 concerning the presumption of correctness applicable to state court factual findings. The question of effectiveness of counsel under *Strickland* is a mixed question of law and fact; it requires the application of a legal standard to the historical, fact determinations. *Berryman v. Morton,* 100 F.3d 1089, 1095 (3d Cir. 1996).

The Supreme Court of the United States recently reiterated the difficulty of prevailing on an ineffectiveness claim on habeas review:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different that if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal

law." A state court must be granted deference and latitude that are not in
operation when the case involves review under the *Strickland* standard itself.

*Harrington,* 562 U.S. at 101 (internal quotations and citations omitted). The Supreme Court further instructed:

> Surmounting *Strickland*'s high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with adversary process the right to counsel is meant to serve. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.
> 
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland'*s deferential standard.

*Id.* at 105 (internal quotations and citations omitted).

The record reflects that, prior to the closing arguments of counsel, the trial court was informed that Rivera's family members claimed to have heard four jurors discussing the case in the hallway. The trial court spoke to the jurors in chambers and inquired as to whether any of them had discussed the case. In denying the claim, the PCRA trial court stated the following:

> None of the jurors indicated that they had been discussing the case, and although the matter was brought to this Court's staff's attention, there is no evidence that such an incident actually occurred.
> 
> . . .

15

> There is nothing about this unsupported averment that requires a mistrial. The jurors themselves denied the allegation, and other than [Rivera's] family – which has an obvious interest in the case – there were no independent observers of the incident. According to counsel's "no merit" letter, [trial counsel] did not know about the alleged incident. [Rivera] has not established that he was prejudiced in any way by the alleged unsupported incident, nor can he show that had a request for mistrial been made, it would have been granted.

PCRA Court Opinion, 6/28/12 (footnote omitted) (ECF No. 9-4 at 25). Further, the PCRA Court noted in a footnote that had trial counsel requested a mistrial on this ground, the request would have been denied. The Superior Court reviewed the record and found that the record supported the trial court's conclusion, especially in light of the conclusion that there were no independent observers of the incident. (ECF No. 9-5, at 38.)

Both the PRCA trial court and Superior Court reviewed this claim and both courts found that there was no evidence of anything occurring which would have warranted a mistrial. It is clear that the appellate court applied the correct standard for ineffective assistance of counsel. Trial counsel's failure to request a mistrial did not fall below an objective standard of reasonableness. Because the claim is baseless, any request by trial counsel for a mistrial would have been denied and counsel cannot be deemed ineffective for failure to pursue an argument which had no chance of success. Also, Rivera, cannot establish prejudice, i.e., but for counsel's errors, the result of the proceeding would have been different. The Superior Court's determination was neither an unreasonable application of *Strickland* nor did it "result[] in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1)-(2). For these reasons, Claim Three will be denied.

CLAIM FOUR: "Trial counsel was ineffective for failing to object to the jury instruction regarding Robbery."

This claim was raised by Rivera in his PCRA proceedings. Both the PCRA trial court and the Superior Court denied the claim on its merits. The instruction given by the trial court was virtually verbatim to the PA Suggested Standard Jury Instruction, Criminal 15.3701A (2008), which states in relevant part:

> 1. The defendant has been charged with robbery. To find the defendant guilty of this offense, you must find that the following two elements have been proven beyond a reasonable doubt:
>
> First, that the defendant: . . . (d) committed or threatened to immediately commit the felony of [type of crime;] and
>
> Second, the defendant did this during the course of committing a theft.

At the conclusion of the trial, the trial court included the following instruction:

> THE COURT: In order to find the defendant guilty of robbery, you must be satisfied that the following elements have been proven beyond a reasonable doubt: First, that the defendant . . . threatened to immediately commit the crime of murder; second, that the defendant did so in the course of committing a theft.

PCRA Court Opinion, 6/28/12 at 8 (ECF No. 9-4).

The Superior Court, in affirming the PCRA court, reasoned as follows:

> At trial, each of [Rivera's] victims testified that [he] threatened to kill them if they did not comply with his demands. Therefore, the trial court did not use the term "murder" to "inflame the jury," but rather used it to appropriately describe to the jury the type of threats made by [Rivera]. Additionally, the use of the term "murder" did not diminish the Commonwealth's burden of proof. *Wayne, supra*.[3]

---

[3] *Commonwealth v. Wayne*, 720. A.2d 456 (Pa. 1998). In *Wayne,* the Pennsylvania Supreme Court stated that, "[a] faulty jury charge will require the grant of a new trial only where the charge permitted a finding of guilty without requiring the Commonwealth to establish the critical elements of the crimes charged beyond a reasonable doubt." *Id*. at 465.

Thus, because trial counsel's objection would have been meritless, [Rivera's] third issue fails. *Loner, supra.*[4]

The Court finds that the trial court's use of the term "murder" in characterizing Rivera's threats did not improperly amplify the evidentiary impact of the victims' testimony. Accordingly, the Superior Court's determination was neither an unreasonable application of *Strickland* nor did it "result[] in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1)-(2). For these reasons, Claim Four will be denied.

CLAIM FIVE: "Petitioner's constitutional rights were violated when his case was inappropriately reassigned to a different judge."

Rivera's final claim is that his constitutional rights were violated when his case was inappropriately reassigned to Judge McDaniel after having initially been assigned to Judge Sasinoski. This claim was raised by Rivera in his PCRA proceedings. Both the PCRA trial court and the Superior Court denied the claim on its merits. After quoting extensively from the PCRA Opinion, the Superior Court found:

> Once again, our review of the record supports the PCRA court's conclusion. We first note that, at the beginning of trial, the trial court stated on the record that it had spoken with both counsel and told them one of the victims was related to the clerk of courts, with whom the trial court worked as president judge. The trial court then stated that counsel for the parties "saw no conflict nor do I feel any prejudice." N.T., 5/28/08, at 3. Additionally, beyond the fact that the case was reassigned, [Rivera] points to no conduct, statement, or ruling by the

---

[4] *Commonwealth v. Loner*, 836 A.2d 125 (Pa. Super. 2003) (en banc), *appeal denied*, 852 A.2d 311 (Pa. 2004) (holding that counsel cannot be deemed ineffective for failing to pursue a meritless claim).

trial court that demonstrated prejudice. Finally, we note that [Rivera's] crimes involved six separate victims. [Rivera] has failed to meet his burden of proof, such that any claim of trial ineffectiveness fails. *Travaglia, supra.*[5]

Superior Court Opinion, 1/28/13 at 13-14 (ECF No. 9-5, at 50-51).

The Court finds that Rivera's claim is without merit. There is nothing in the record to suggest that trial counsel's performance was deficient or that Rivera was prejudiced in way when the case was reassigned to Judge Donna Jo McDaniel. Significantly, this was a jury trial, not a bench trial. The determination of guilt or a finding of not guilty was solely in the hands of the jury. Rivera does not complain of any evidentiary ruling, conduct, or statement by the trial court which even remotely prejudiced him. The Court finds that the Superior Court's determination that Rivera was not prejudiced in any way by the re-assignment of his case, was neither an unreasonable application of *Strickland* nor did it "result[] in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1)-(2). For these reasons, Claim Five will be denied.

## Certificate of Appealability

With respect to Rivera's claim that was denied due to procedural default (Claim Two), a certificate of appealability will be denied because jurists of reason would not find it debatable whether this claim was procedurally defaulted. *See, e.g., Slack*, 529 U.S. at 584 (explaining

---

[5] *Commonwealth v. Travaglia,* 661 A.2d 352, 357 (Pa. 1995) (explaining that when it is clear that an appellant has failed to meet the prejudice prong, the court may dispose of the claim on that basis alone, without a determination of whether the first two prongs have been met). Although the Pennsylvania standard for ineffectiveness of counsel is identical to the federal standard, *Boyd v. Waymart*, 579 F.2d 330, 334 (3d Cir. 2009), to prevail on an ineffective assistance of counsel in state court, the party must show (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. *Commonwealth v. Meadows*, 787 A.2d 312, 319-20 (Pa. 2001).

standard for grant of a certificate of appealability where court does not address petition on the merits but on some procedural basis).  Additionally, with respect to Rivera's claims that were denied on the merits, a certificate of appealability will be denied, as Rivera has failed to make "a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(2).

### Conclusion

For all of the above reasons, the petition for a writ of habeas corpus will be denied.  The Court finds that there is no basis upon which to grant a certificate of appealability.  An appropriate Order follows.

### Order of Court

**AND NOW**, this 13th day of April, 2016, in accordance with the foregoing Memorandum Opinion, the petition for writ of habeas corpus filed by Petitioner Tito Rivera is **DENIED** and a certificate of appealability is **DENIED**.


s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge


cc:  TITO RIVERA
     HT-0703
     SPECIAL MAIL-OPEN ONLY IN THE PRESENCE OF THE INMATE
     SCI Houtzdale
     PO Box 1000
     Houtzdale, PA 16698-1000
     (via U.S. First Class Mail)

     Rusheen R. Pettit
     Office of the District Attorney of Allegheny County
     (via ECF electronic notification)